Okay, good morning. Before we start the clock, I don't, I didn't see, did you got it from that table? I see a purse down there, I guess. Are you going to use all the time, or? Yes, your honor. Okay, so you're not sharing any arguments. Okay. All right, thank you. Then I will call the case of Mark Harris v. Warren Montgomery, 1-6-56-596, and you may proceed 10 minutes each side. Good morning. May it please the court, Saivamana Peterson for appellate Mark Harris. I'd like to reserve two minutes for rebuttal. Mr. Harris respectfully asked this court to vacate his conviction by guilty plea and allow him to start over again by going to trial, or in the alternative, remand for an evidentiary hearing so that he may prove he would have done just that given a chance to 30 years ago. I just, I need to jump in here quickly with just, and I'll let you go into things, but just the reality of those of us that have done criminal law either as a judge or as a lawyer as far as that goes, and both. You have a defendant that takes a plea bargain where he gets a life sentence, right? That's right, your honor. And it's fairly, so he's got what, is it a first and a secondary murder? That's right, your honor. You rarely get an advantage for killing two people. I mean, generally, you know, that, those are consecutive sentences. So he manages to get down from somewhere around 40 to life down to 26 to life, something along those lines, right? Your honor, he did get a benefit by virtue of pleading. Okay. And the whole discussion about parole came after he was already going to enter his plea. And so when it, I find it a little bit incredible, and I think that there was, that someone that is willing to plead to a life sentence wouldn't have done that, especially when they can bring it down from 40 to 26, because we all know that that makes your eligibility of parole sooner, that they're going, that they wouldn't have taken the deal because they don't want to be on parole where they get out of prison. They're already, when he was doing it, he was facing the possibility, hey, I'm going to be locked up for the rest of my life. There's no promise you get parole. But he wouldn't have done that because he thought he would have been on parole, could have been on the outside, and would have had to check with a parole agent for life as opposed to for five years. Your honor, I understand your difficulty believing that Mr. Harris would have done that. I understand where someone could think that after they've already gotten the deal and they've sat in prison for a long time. But on that date, I find that pretty incredible. But I want to start by pointing out something that I think is clear from the record, and that's that Mr. Harris did not agree to plea guilty prior to being advised about the parole term. The plea colloquy transcript, which is in the excerpts of record, shows that Mr. Harris pled guilty and his plea was accepted by the plea taking court only after the plea taking court had misadvised him about his parole term being five years. They had done that three times. His attorney stood by and allowed that mistake to go. Well, but they came in with a deal, didn't they? They came in with a deal. The deal was already set up. The judge can't come up with a deal that you get concurrent sentences for more than one murder or things along those lines. And it was the judge that initiated a question, hey, what about the parole or whatever? Your honor, the deal in this case was memorialized only in the oral plea colloquy, and the deal was that he was subject to a five-year parole term. That is what he understood to be his deal, and that is what he agreed to. The fact that the trial court made a mistake and the fact that his attorney allowed that mistake to go uncorrected, which means allowed his client to understand that five years of parole was a term of his deal, is a complete breakdown in the state criminal justice system, which habeas relief is precisely designed to correct. Every procedural safeguard, everything that could have fixed the errors in this case, which are stemming from the court itself, stemming from his attorney, stemming from the prosecutor, weren't in place to fix those errors, to counteract its effect. Counsel, I mean, I think, I agree with you that there was a bad mistake made in this case. I think the question, though, is that in light of what the state court said, was it so bad that under AEDPA we can say, gosh, state court just got that totally wrong? And, I mean, that is the question we have to answer in this case, isn't it? That is the question that you have to think about. Yes, Your Honor. But I would argue that AEDPA doesn't apply in this case because that's not the question that the state court took it upon itself to answer. The state court got it wrong. It applied a contrary, a standard that's contrary to clearly established federal law in Hill v. Lockhart, which says that all a petitioner has to do is make two allegations. And that's a threshold inquiry that entitles him to an evidentiary hearing where he might be able to prove up the full showing of his prejudice under strictly law. Let's assume we had that hearing. And I think that's probably your best argument in this case is to try to get a hearing in the district court. I assume your client would come into court and say what he effectively said in his declaration and say, look, this really, really mattered to me. And his mom could say this really, really mattered to him. What else would there be besides that? Your Honor, potentially he could get his trial counsel, Mr. William McKinney, to talk in Lee v. United States. The evidentiary hearing gave the petitioner or gave the appellant the benefit of having his attorney, whose mistake was the cause of the prejudice, getting up on the stand and saying, yes, this is how I made a mistake and this is how important it was to my client and the Supreme Court. Well, everyone agrees that it's wrong. The five years isn't correct. And so you could have had an affidavit from the attorney saying more prior to this. I mean, but even if he says, I think what your client said is his attorney told him that upon release from prison he would be subject to parole for several years. And did Mr. Harris ask for any clarification of what his attorney meant by several? He understood several years to mean five years. He had no reason to doubt that both his lawyer and the trial court had gotten the law wrong. And in Lee, the plea colloquy suggests that or the transcript suggests that the plea taking court put Mr. Lee on notice that something untoward was going on. They asked Mr. Lee, do you understand that you might be subject to immigration consequences as a consequence of your plea? And at that point, he turned to his attorney and said, what does this mean? There was no equivocation in Mr. Harris. He was getting it down to 26 to life as opposed to 40 to life because he had a first and a second, 25 to life and 15 to life, right? So that's what we stack, what he faced. So he's eligible for parole when? Your Honor, Mr. Harris was eligible for parole in 2010, and that's precisely when he discovered that he was subject to a life term of parole. Within a month, he had his he was talking to his mom trying to get got her declaration. But not getting parole had nothing to do with the five years. Right. He was denied parole and he had an he was when does he come up for parole again? Your Honor, that information is not in the record before this court. And I'm willing to answer it if this court will allow me to. Well, he's not out. Correct. That's why we have a habeas. I think what you're getting at is that the nature of the harm here is different from the nature of the harm of being out on parole is different from the nature of the harm from having an extended period of a prison sentence. And that's the argument Mr. Harris is making. And I believe that the threshold inquiry at the threshold inquiry stage under Hill and Lee, he's entitled to get a hearing to prove that up to test so that fact finding court can test what he's saying to test the credibility of it, to test the reasonability of it. It's not appropriate for the state court to have done that on the pleadings.  Thank you. Morning. May please support Charles Lee for the warden. Under Strickland and Hill petitioner has to show a reasonable probability that he would not have accepted the plea. He doesn't satisfy that standard just by saying he wouldn't have accepted it. And here the Superior Court found that petitioners claim that he wouldn't have accepted the plea was wholly unbelievable. And that finding was reasonable. As you understand, we have to look at this from the perspective of petitioner at the time he entered the plea in 1989. And at that time, he's facing 48 years to life in state prison.  So that's the real choice that was before him. And this idea that somehow parole was what was really important to him, the Superior Court's allowed to find that that idea was a little bit too far fetched. And again, there's nothing in the record to support the idea that parole was so important to him that he would rather spend 22 years in prison than be on parole. If you look at the transcript of the plea hearing itself, at the beginning of the hearing, the prosecutor announced the terms of the plea. And he announced, when he announced the terms of the plea... So it's actually 48 years, not 20, no, he said 40, I think. Did I get that wrong? Yes, I think it was 47 years and 8 months, so almost 48 years to life. Okay. And the prosecutor announced the terms of the plea at the beginning of the plea hearing, and he made no mention of parole. They went through the entire plea colloquy with the prosecutor asking Petitioner if he's willing to give up his constitutional rights, if he was willing to admit to the terms of the plea, willing to admit to the charges. Petitioner said he was. And again, there was no mention of a five-year parole at that point. It was only until the very end, right before the trial court accepted the plea, that the trial court asked him, he said, well, I have to mention this five-year parole situation. So that's the only time during the plea hearing... When you plead to a life sentence, it can mean just that, correct? That's correct. But the difference between 48 years to life and 26 years to life is that he actually has a chance to still get out of prison as a young man. And so I think when he was talking in his declaration about putting the matter behind him, that's what he's talking about, trying to get out of prison as quickly as possible. He's not talking about parole, something that wouldn't even come into play until 25 or decades later. So what would an evidentiary hearing accomplish? What could he put in at an evidentiary hearing? There's really not much that he can accomplish at an evidentiary hearing. And as this court explained in Perez v. Rosario, there's no need for a state court to hold an evidentiary hearing if there's no likelihood that any evidence would come in that would change its mind. And here we already have petitioner's declarations, we have his mother's declarations, and we have the record in this case, and that's enough to decide the issue. Conceivably, we could have his attorney come and testify. But based on petitioner's own declaration, all his attorney would have said was that petitioner told him he wanted to get the matter over as quickly as possible. So that doesn't really change anything. And so because there's no need for an evidentiary hearing, there's no likelihood that it would change anything. There's no need to hold one. State court can dismiss a claim based on the declaration, based on the facts of this case, and just find that his petitioner's allegations were not credible. And unless your honors have any other questions. No, we don't appear to have any additional questions. Thank you for your argument. Thank you. Your honors, I'd like to start by countering the suggestion that there's no need for an evidentiary hearing. There is absolutely a need for an evidentiary hearing because Hill v. Lockhart, the Supreme Court in Hill v. Lockhart said there is a need for an evidentiary hearing. And I also want to counter the argument that Mr. Harris has nothing but his own statements in this case. He has offered up a whole lot more than that. He has declarations from himself and his mother, the only readily available evidence that he had. And in Hill, the Supreme Court held that all he needed to do was allege some special circumstances that would show why he placed particular emphasis on parole. And to allege that, but if he had been properly advised that he was subject to a life-term parole, that he would not have pled guilty and would have insisted on going to trial. The respondent concedes that Mr. Harris did both those things in his answer, and there was no need for Mr. Harris to do anything beyond that in this record. There was no equivocation, no confusion, and he should not be faulted for his attorney's failure to put him on notice that he should make a contemporaneous or some sort of objection during his plea colloquy. And I see that I am out of time if there is no further questions. You do not appear to be. Thank you. Your Honors. This matter will stand submitted.
judges: Fisher, Callahan, Owens